UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. 17CR197S |
| | § | |
| FELIX AMOS, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Rodolfo Ramirez, Assistant United States Attorney, and the defendant, Felix Amos ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Superseding Indictment. Count One charges Defendant with Conspiracy to Commit Health Care Fraud, in violation of Title 18, United States Code, Section 1349. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1349, is imprisonment of not more than 10 years and a fine of not more than $250,000.00. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised

release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the United States Sentencing Guidelines ("Sentencing Guidelines"). Defendant understands and agrees that whether such a motion is filed will be determined solely by

the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 22 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to health care fraud and money laundering. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005).

Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the superseding indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

11. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the

sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

   a. Under the rules of Medicare for a provider to receive payment for home health services, physicians must certify that the beneficiaries qualify for home health services. The certification forms are commonly referred to as 485s. Before providing services, home

health agencies submit Requested Anticipated Payments ("RAPs") to Medicare that include the name of the certifying physician. Upon receipt of a RAP Medicare pays a portion of the anticipated service cost up front (i.e. before the service is provided). Once the service is completed, the home health agency submits a final claim to Medicare detailing the true cost of the service. Medicare then pays any remaining balance or seeks reimbursement for expenses not incurred.

b. Defendant conspired with Oluyemisi Amos ("Oluyemisi") and Fausat Adekunle ("Fausat") to defraud Medicare and Medicaid from in or about March 2010 through in or about April 2015. Defendant and co-conspirator Oluyemisi co-owned Dayton Health Bridges, Inc. ("Dayton"), and Advanced Holistic Healthcare Services, Inc. ("Advanced"), while Oluyemisi also owned Access Practical Solutions DBA Access Home Care ("Access"), GetUpandWalk, Inc. ("GUAW"), and Guarranty Home Health Agency ("Guarranty") (collectively "Home Health Agencies"). Most of the Home Health Agencies were existing companies that the Defendant and co-conspirator Oluyemisi purchased.

c. Defendant and co-conspirators Oluyemisi and Fausat used the Home Health Agencies to defraud Medicare by submitting RAPs without final claims. Defendant and co-conspirators Oluyemisi and Fausat also back billed services that were not provided.

d. Defendant and co-conspirators paid individuals to obtain Medicare beneficiaries' information including 485 certification forms. Defendant and co-conspirators Oluyemisi and Fausat used beneficiary information to bill Medicare on behalf of the Home Health Agencies without providing any services.

e. Defendant and co-conspirator Oluyemisi told Fausat to bill for services they knew were not provided by the Home Health Agencies.

f. In 2010, Defendant and co-conspirator Oluyemisi paid Dr. B.I. to certify Medicare beneficiaries for home health services for Dayton. Dr. B.I. stated that the people she certified for Dayton did not qualify for home health services or physical therapy. Dr. B.I. also stated that the Dayton Medicare beneficiaries told her that they had not received home health services. Defendant and co-conspirator Oluyemisi used Dr. B.I.'s fraudulent certifications to bill Medicare for services that were not medically necessary or provided, including services billed for W.C. and V.R.

g. From 2012 to 2014 Defendant and co-conspirators Oluyemisi and Fausat billed Medicare through the Home Health Agencies for home health services provided to L.J., J.W., P.L., L.A., A.H., E.B., R.L., B.M., H.G. (collectively Medicare Beneficiaries). The Medicare Beneficiaries stated that they did not receive any home health services from the Home Health Agencies.

h. Defendant and co-conspirators Oluyemisi and Fausat, knowingly billed Medicare for services based on false home health certifications that they purchased. Defendant and co-conspirators Oluyemisi and Fausat also used some physician information without the knowledge of the physicians to create false 485 certifications.

i. Defendant and co-conspirators knew that the Medicare home health claims were false and that the services were not provided, because they did not send employees to provide home health services.

j. During the time of the conspiracy, Defendant's only source of income was health care fraud. Defendant used the health care fraud proceeds to purchase several properties including the following:

k. Real property on Holly Springs, in Houston, Texas, with a legal description of Lot 1, Block 41, Tanglewood Section 9, .4318 acre ("Holly Springs"). Defendant and co-conspirator transferred approximately $3,500,000.00 from Access, money they received from fraudulent billing, to Triple Gate Investment LLC ("Triple Gate"). On November 14, 2014, the Defendant and Oluyemisi wired $3,300,000.00 in proceeds from Triple Gate to Charter Title Company for the purchase of the real property on Holly Springs.

l. Real property on Mystic Arbor Lane, in Houston, Texas, with a legal description of Lot 5, Block 4, Lakes of Parkway, Section 18 Amendment No. 1 ("Mystic Arbor"). On July 24, 2012, Defendant and Oluyemisi purchased Mystic Arbor with health care fraud proceeds.

m. Real property on Mint Field, in Houston, Texas, with a legal description of Lot 4, Block 5, Klein Arbor ("Mint Field"). On February 3, 2016, the Defendant and Oluyemisi, through Triple Gate, purchased Mint Field, with health care fraud proceeds, including a $182,495 wire from GUAW.

n. Defendant had $6,450.00 on his person when he was arrested at the airport that was also proceeds from the health care fraud.

o. During the indictment dates, Defendant and co-conspirators billed Medicare approximately $23,258,376.57 through the Home Health Agencies and received approximately $21,197,440.14 as payment for those claims.

## Breach of Plea Agreement

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) <u>within 14 days of signing this plea agreement</u>. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security

information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

21. Defendant agrees to pay full restitution to the victim regardless of the count of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim, Medicare, incurred a monetary loss of approximately $21,197,440.14. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

22. Defendant stipulates and agrees that the property listed in the Superseding Indictment's Notice of Forfeiture is subject to forfeiture, and Defendant agrees to the forfeiture of

that property. In particular, but without limitation, Defendant stipulates that the following specific property (and any proceeds traceable to the sale of such property) is subject to forfeiture:

(a) $6,450.00 in U.S. currency seized from Felix Amos on or about March 17, 2017.

(b) Proceeds traceable to real property at 5506 Holly Springs Drive, Houston, Texas, with a legal description of Lot 1, Block 41, Tanglewood Section 9, .4318 acre.

(c) Real property at 1802 Mystic Arbor Lane, Houston, Texas, titled to Triple Gate Investment LLC, with a legal description of Lot 5, Block 4, Lakes of Parkway, Section 18, Amendment No. 1.

(d) Real property at 12622 Mint Field, Houston, Texas, titled to Triple Gate Investment LLC, with a legal description of Lot 4, Block 5, Klein Arbor.

Defendant specifically agrees to cooperate with and not contest the forfeiture of the real property (or its sales proceeds), whether the United States chooses to forfeit such property criminally or civilly; agrees to cooperate in signing any documents to facilitate the sale of and transfer of Triple Gate's title to the real properties, specifically including signing a deed to the United States if requested; and agrees to the forfeiture of (and that he will not file or pursue any claims to) the $160,375.00 in exempt property (from the liquidated Holly Springs residence) in the bankruptcy proceeding filed by his spouse Oluyemisi (Case No. 16-35021, In Re: Oluyemisi Omokafe Okedokun, pending before Judge Jeff Bohm in the U.S. Bankruptcy Court in the Southern District of Texas, Houston Division).

23. Defendant stipulates and agrees that Defendant obtained at least approximately $21,197,440.14 from the criminal offenses and that the factual basis for his guilty plea supports

13

the forfeiture of $21,197,440.14. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of $21,197,440.14. Defendant agrees to the imposition of a personal money judgment in that amount.

24. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

25. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

26. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

27. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

28. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States,

14

Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on December 18, 2018.

_____
Defendant

Subscribed and sworn to before me on December 18, 2018.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Assistant United States Attorney
Southern District of Texas
Telephone: 713 567-9000

_____
Attorney for Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 17CR197S |
| § | |
| FELIX AMOS, § | |
| Defendant. § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          12·18·18
Attorney for Defendant                Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          12·18·18
Defendant                             Date

16